# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03101-REB-SP

MARK FULLER,

    Plaintiff,

v.

STANDARD INSURANCE COMPANY,

    Defendant.

## ORDER REGARDING DISCOVERY DISPUTE

**Susan Prose, United States Magistrate Judge**

    This matter is before the court on a discovery dispute concerning the inadvertent disclosure of three documents characterized as confidential by Defendant Standard Insurance Company ("Standard") pursuant to the attorney-client privilege. The parties submitted written analyses of the issue pursuant to the court's discovery dispute procedures,[1] *see* ECF Nos. 55 and 56, and this court heard oral argument on the matter. For the reasons that follow, the court finds that two of the documents are protected, and the privilege has not been waived. The remaining document is not privileged, as counsel for Standard acknowledged at oral argument.

---

[1] The parties initially raised this dispute before Magistrate Judge Kristen Mix, *see* ECF Nos. 44 and 48, to whom the case was assigned at the time as the referral judge for all non-dispositive matters. The case was recently reassigned to this court as the referral judge. ECF No. 66. This court now considers this non-dispositive matter pursuant to 28 U.S.C. § 636(b)(1)(A) and the Order Referring Case. ECF No. 8.

## BACKGROUND

Plaintiff Mark Fuller initiated this action on September 24, 2021, in Boulder County District Court. ECF No. 1-1. On November 18, 2021, Standard removed the action to this court, asserting diversity jurisdiction under 28 U.S.C. § 1332. ECF No. 1. The essence of Mr. Fuller's complaint is that Standard breached the terms of an Individual Disability Income insurance policy, resulting in damages to Mr. Fuller. ECF No. 7-2. Standard denied the substantive allegations in the complaint and raised numerous defenses. ECF No. 11. A jury trial is set for March 4, 2024. ECF No. 49 at 1.

The present discovery dispute concerns the production of three documents contained in Standard's claim file for Mr. Fuller. It is undisputed that the claim file, consisting of 2,498 pages, was produced to Mr. Fuller's counsel on February 4, 2022. *See* ECF No. 56-1 at 2. It is also undisputed that the three documents that are at issue here were produced as part of the claim file:

> (1) a June 22, 2020 "ADJ Memo" labeled "Attorney Client Privilege – Do Not Copy or Distribute," prepared by Sara Haines, a benefits review specialist in Standard's Appeals Review Unit (bates number IDI 2021-04414-001946);

> (2) a June 23, 2020 email regarding "ADJ," and labeled "Attorney Client Privileged Communication," from Ms. Haines to John Harrington, a Senior Attorney with Standard (bates number IDI 2021-04414-001958); and

> (3) a series of emails spanning the timeframe May 14, 2020, to June 15, 2020, between Ms. Haines, Mr. Harrington, and a legal assistant for Standard named Minerva Campuzano, regarding "Action Required for Your ADJ Review – Claim No. 00WA0977," one of which was labeled "privileged & confidential" (bates number IDI 2021-04414-001952 – 1957).

In briefing papers and at oral argument, Standard's counsel represented that the disclosure of these documents, constituting eight pages out of the 2,498-page claim file, was

2

inadvertent. According to counsel, Standard did not become aware of the disclosure until November 10, 2022, nine months after the documents were disclosed, when counsel for Mr. Fuller mentioned one of the documents in an email. Counsel for Standard immediately asked Mr. Fuller's counsel to sequester the documents pursuant to Federal Rule of Civil Procedure 26(b)(5)(B), which counsel did.[2] The parties were unable to reach an agreement concerning whether the disputed documents are privileged, and if so, whether the privilege was waived by the disclosure. Counsel ultimately brought these issues to the court, which addresses them now.

## LEGAL STANDARDS

Rule 26(b)(5) of the Federal Rules of Civil Procedure governs the withholding and production of privileged materials in a federal lawsuit. As pertinent here, the Rule states:

> (A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.
> (B) *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

---

[2] Counsel for Standard argued that the handling of the disputed documents by opposing counsel was "a clear violation" of counsel's ethical obligations. *See* ECF No. 55 at 2-3. Having heard and evaluated the arguments raised at the discovery hearing, this court declines to make such a finding.

3

Fed. R. Civ. P. 26(b)(5).

In diversity jurisdiction cases such as this one, state law controls issues of privilege raised by the parties. *See* Fed. R. Evid. 501 (2010); *see also Trammel v. United States,* 445 U.S. 40, 47 n.8 (1980). In Colorado, the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker,* 232 P.3d 194, 198 (Colo. App. 2009) (citing *Losavio v. Dist. Court,* 533 P.2d 32, 35 (Colo. 1975)); *see also People v. Trujillo,* 144 P.3d 539, 542 (Colo. 2006) ("[t]he attorney-client privilege applies to confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations"). The privilege applies only to communications made under circumstances giving rise to a reasonable expectation that the communications will be treated as confidential. *Tucker,* 232 P.3d at 198 (citing *Wesp v. Everson,* 33 P.3d 191, 197 (Colo. 2001)). Mere statements of fact are not protected by the attorney-client privilege. *Trujillo,* 144 P.3d at 545 (citing *Gordon v. Boyles,* 9 P.3d 1106, 1123 (Colo. 2000) (noting that "the privilege protects only the communications to the attorney; it does not protect any underlying and otherwise unprivileged facts that are incorporated into a client's communication to his attorney")).

Colorado courts have adopted an "ad hoc" approach for determining whether an inadvertent disclosure of privileged documents by an attorney or client constitutes a waiver of the privilege. *Floyd v. Coors Brewing Co.,* 952 P.2d 797, 808-09 (Colo. App. 1997), *rev'd on other grounds,* 978 P.2d 663 (Colo. 1999). *Floyd* held that, in those instances in which an alleged inadvertent disclosure occurs, the most appropriate means to determine whether the disclosure

4

should be considered a waiver of the attorney-client privilege is to "consider a number of factors to determine whether the disclosure resulted from excusable inadvertence or from some chargeable negligence or other fault." *Id.* Among the factors considered are: "(l) the extent to which reasonable precautions were taken to prevent the disclosure of privileged information; (2) the number of inadvertent disclosures made in relation to the total number of documents produced; (3) the extent to which the disclosure, albeit inadvertent, has nevertheless caused such a lack of confidentiality that no meaningful confidentiality can be restored; (4) the extent to which the disclosing party has sought remedial measures in a timely fashion; and (5) considerations of fairness to both parties under the circumstances." *Id.*

### ANALYSIS

The court analyzes the three documents at issue to assess whether they are protected from disclosure by the attorney-client privilege.[3] For the documents that are protected, the court will proceed to determine whether the protection was waived by the disclosure or whether the disclosure was inadvertent.

**I.     The June 22, 2020 ADJ Memo.**

***The document is privileged.*** Without revealing any confidential information, this memorandum is titled "ADJ Memo/ARU - From the desk of Sara Haines," and references Mr. Fuller and his claim number. Although not dispositive of the privilege question—it is well-settled that "the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege*," Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995)—the heading on the memorandum, in

---

[3] Standard has not argued that the disputed documents are covered by the work product doctrine.

all capital letters, is "Attorney Client Privilege – Do Not Copy or Distribute." Standard asserts that this document reflects Ms. Haines' discussions with Mr. Harrington, an attorney for Standard, "for the purpose of legal advice, specifically, to determine whether, from a legal standpoint, she was able to address in her appeal determination certain contract provisions that had not previously been raised or fully addressed." ECF No. 55 at 2.

This court finds that the plain language of the memorandum supports Standard's characterization of it. The memorandum describes Ms. Haines' consultation with Mr. Harrington and the specific advice he provided, including: (1) how to review Mr. Fuller's claim file; (2) how to apply provisions in Mr. Fuller's policy, (3) various defects, from the attorney's perspective, in Mr. Fuller's claim; and (4) other recommendations to Ms. Haines concerning how to handle the claim. Put simply, the memorandum details Ms. Haines' communications with Standard's attorney for the purpose of "gaining counsel, advice, or direction with respect to the client's rights or obligations," *Tucker*, 232 P.3d at 1983, distinguishing this situation from those in which the insurer's attorney is "acting in an investigative capacity, and not as a legal counselor." *See, e.g.*, *Colo. Mills, LLC v. Phila. Indem. Ins. Co.*, No. 12-cv-01830-CMA-MEH, 2013 WL 1340649, at *3-4 (D. Colo. Apr. 2, 2013) (concluding that attorney-client privilege did not apply where insurer "was not solely seeking legal advice from [the attorney] as counsel, but, rather, [insurer] largely sought factual information and an evaluation concerning whether Plaintiff's claims were covered").

As Ms. Haines stated in a sworn declaration submitted to this court: "My request to the legal department and my conversation with attorney John Harrington was for the purpose of seeking advice. I was, and at all times remained, fully responsible for all decisions relating to the

6

investigation of the appeal and making the appeal determination." ECF No. 55-1 ¶ 4. Mr. Fuller characterizes these statements as "conclusory," ECF No. 56 at 3, but the statements are borne out both by the contents of the memorandum and the nature of Ms. Haines' contact with Mr. Harrington, the Standard attorney assigned as the "ADJ"—or "Attorney du Jour," as counsel for Standard explained at oral argument. Ms. Haines' request for legal advice was randomly assigned to Mr. Harrington, emphasizing his short-term role as legal counsel providing advice, rather than as an adjustor assessing how a claim should be handled. The court finds nothing to undermine Ms. Haines' statement that "I was performing my job as a benefits review specialist when I completed my evaluation of [Mr. Fuller's] claim." ECF No. 56 at 2 (discussing ECF No. 56-5 at 5-6). Indeed, that is precisely the point: it was *Ms. Haines'* job to investigate and evaluate the claim; the job of the "Attorney du jour" was to advise Ms. Haines concerning the legal parameters for completing her job.

In sum, the court concludes that the June 22, 2020 ADJ Memo is protected by the attorney-client privilege.

***The privilege has not been waived.*** Turning to the question of whether the disclosure of the memorandum waived the attorney-client privilege, the court considers the relevant factors identified by Colorado courts. *See Floyd*, 952 P.2d at 808-09. The court concludes that, on balance, the factors favor claw back of the document.

First, with regard to the extent to which reasonable precautions were taken to prevent the disclosure of privileged information, it is undisputed that a paralegal for Standard conducted a page-by-page review of Mr. Fuller's claim file, prepared a detailed 13-page privilege log, and nevertheless overlooked the June 22, 2020 ADJ memo. The court heard no evidence prompting it

7

to question the paralegal's good faith in conducting the review, especially given his obvious attempt to create a detailed privilege log. Neither was the court presented with any evidence that would induce it to view the omission as anything other than a simple mistake. Therefore, the court concludes that this factor weighs in favor of finding inadvertent disclosure.

Second, in light of the undisputed fact that only eight pages of privileged documents were disclosed in relation to the 2,498-page claim file produced, the court finds that this factor also weighs in favor of finding inadvertent disclosure.

Third, as to the question of whether the disclosure has caused such a lack of confidentiality in the process that no meaningful confidentiality can be restored, the court considers the limited dissemination of the document and the parties' prompt agreement to sequester and to cease further transmission of the document after Standard learned that it had produced these documents. ECF No. 55 at 4. In light of this history, an order directing Mr. Fuller to destroy all electronic and paper copies of the memorandum, and to make no further use of the document in this case, is sufficient to restore confidentiality under these circumstances. Here, too, the court concludes that this factor weighs in favor of inadvertent disclosure.

Fourth, considering the extent to which the disclosing party has sought remedial measures in a timely fashion, the court finds that remedial measures were timely sought. The parties do not dispute that Standard's counsel first became aware of the disclosure on November 10, 2022, when Mr. Fuller's counsel referred to the documents in an email. Counsel for Standard emailed back on November 11, 2022, advising opposing counsel that the disclosure was inadvertent. The same day, Standard re-produced the entire claim file (minus the documents in question) and a new privilege log. On November 14, 2022, counsel for Mr. Fuller agreed to

sequester the documents pursuant to Rule 26(b)(5)(B). The court finds that Standard sought remedial measures in a timely fashion and, indeed, counsel for Mr. Fuller has advised the court that their client does not dispute timeliness. The court therefore finds that this factor weighs in favor of finding inadvertent disclosure.

Fifth, taking into consideration fairness to both parties under the circumstances here, Standard has represented to the court that it has not relied on the memorandum in defending this case and does not intend to rely on that information at trial. ECF No. 55 at 5. This disclaimer of an advice-of-counsel defense renders communications between Ms. Haines and legal counsel wholly irrelevant to this dispute. As one court in this judicial district has put it, "[i]t does not matter what advice Defendants' attorneys gave them. Rather, in deciding the merits of the dispute, Defendants' conduct and knowledge alone is relevant." *Riggins v. City of Louisville*, No. 06-cv-02261-WYD-MJW, 2008 WL 11429560, at *3 (D. Colo. May 28, 2008) (concluding that the inadvertent disclosure of privileged documents did not amount to a waiver of the attorney-client privilege). The same is true here. The court finds that, in fairness to Standard, it should not be penalized for its counsel's inadvertent disclosure.

In conclusion, weighing the relevant factors, the court finds that Standard inadvertently disclosed the June 22, 2020 ADJ Memo and, thus, did not waive the attorney-client privilege as to that document.

Finally, the court briefly addresses Mr. Fuller's assertion that the documents at issue here have been stripped of the attorney-client privilege by the crime-fraud exception, allegedly because "Defendant used its attorney to deny Plaintiff's disability benefits in bad faith." ECF No. 56 at 4. The court respectfully disagrees and finds no merit in the argument.

9

"It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (internal citations omitted). "The evidence must show that the client was engaged in or was planning the criminal or fraudulent conduct when it sought the assistance of counsel and that the assistance was obtained in furtherance of the conduct or was closely related to it." *In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir. 1998). The exception applies "if the assistance was used to cover up and perpetuate the crime or fraud." *Id.*

These standards are not met here. There is nothing in the June 20, 2022 ADJ Memo—or in any other document at issue here—remotely suggesting that Ms. Haines sought advice, or that Mr. Harrington provided advice, to facilitate the commission of a fraud or crime. Mr. Fuller's contention that Standard denied his disability benefits in bad faith is a matter for the jury to decide; his disagreement with Standard on that issue does not elevate the appropriate communications between Ms. Haines and Mr. Harrington here to the level of criminal or fraudulent conduct.

II.   **The June 23, 2020 email.**

Following on the heels of the June 22, 2020 ADJ memo, the June 23, 2020 email from Mr. Harrington to Ms. Haines reflects continuing legal advice provided by Mr. Harrington to Ms. Haines and is subject to the attorney-client privilege. In the text of the email, titled "ADJ," Mr. Harrington identifies a specific issue on which Ms. Haines sought advice concerning her handling of Mr. Fuller's claim.[4] For the reasons discussed above in connection with the June 22,

---

[4] The email references an attachment that Mr. Harrington provided as an example for Ms. Haines

2020 ADJ Memo, the court likewise finds that Standard inadvertently disclosed the June 23, 2020 email and, thus, did not waive the attorney-client privilege as to that document.

**III.    The email chain.**

As noted above, Standard initially argued that a series of emails between Ms. Haines, Mr. Harrington, and a legal assistant for Standard were privileged. At oral argument, counsel for Standard stated that these emails are not privileged. The court agrees. The emails merely reflect a request by Ms. Haines to be connected with an attorney for consultation purposes and, after Mr. Harrington was assigned, the ensuing efforts to transmit documents to him. No privileged information is revealed in those logistical communications.

**CONCLUSION**

For the reasons stated above, it is hereby **ORDERED** that:

(1)    Within **ten days** of this Order, counsel for Plaintiff shall verify, in writing, to counsel for Defendant, that Plaintiff's counsel and all persons to whom Plaintiff's counsel disseminated the June 22, 2020 ADJ Memo (bates number IDI 2021-04414-001946) and the June 23, 2020 email (bates number IDI 2021-04414-001958) have destroyed all written and electronic versions of those documents. The documents shall not be used in any manner in this litigation.

(2)    The email chain dated May 14, 2020, to June 15, 2020 (bates numbers IDI 2021-04414-001952 – 1957) is not privileged.[5]

---

to follow in her work on Mr. Fuller's claim. That attachment, which apparently was not included in the claim file, is not the subject of the discovery dispute here.

[5] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28

11

DATED: June 7, 2023                    BY THE COURT:

                                        _____
                                       Susan Prose
                                       United States Magistrate Judge

---

U.S.C. § 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").